UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Steve Jordan**, individually and on behalf of all others similarly situated, | No. 1:24-cv-08065 |
| Plaintiff, | |
| | **PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM** |
| v. | |
| **Paylocity Corporation** | |
| Defendant. | |

Now comes Plaintiff, Steve Jordan, through Counsel, and respectfully requests that the Court dismiss Defendant's Counterclaim pursuant to 735 ILCS § 110 *et seq.*, Fed R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1) for the reasons detailed herein. The Parties have met, conferred and agreed upon a briefing schedule for this Motion and propose that Defendant's response be due on December 23, 2024, and that Plaintiff's Reply be due on January 6, 2025.

## I.    RELEVANT FACTS AND PROCEDURE

Plaintiff was employed by Defendant as an "Enterprise Client Account Executive" from September 2023 until June 2024. (*See* Declaration of Steve Jordan, "Jordan Decl.", attached hereto as Exhibit "A" at ¶ 1). Following the conclusion of his employment, and after extensive pre-suit dialogue between Counsel for the parties, Plaintiff filed the instant matter on September 5, 2024. (Doc. 1). Plaintiff's Complaint alleges that Defendant improperly classified him as exempt from the overtime requirements of the Fair Labor Standards ("FLSA") and Illinois Minimum Wage Law ("IMWL") and that he is owed unpaid overtime as a result. Plaintiff's Complaint further alleges that Defendant failed to pay him all earned bonuses and commissions as previously agreed by the Parties in violation of the Illinois Wage Payment and Collection Act ("IWPCA").

Defendant filed an Answer and Counterclaim on November 4, 2024. (Doc. 6). Defendant's

Counterclaim asserts two counts: (1) breach of fiduciary duty; and (2) unjust enrichment. While Plaintiff is attempting to exercise his protected wage rights and seek bonuses and commissions that have not been paid to him, Defendant through its Counterclaim is threatening to claw back compensation which have already been paid to Plaintiff. Defendant's Counterclaim implies that Plaintiff engaged in some unknown subterfuge but does not detail the same. Instead, Defendant makes threadbare conclusions that Plaintiff engaged in fraud and misrepresentation. (*See* Doc. 6 at ¶¶ 26-33).

As detailed further herein, Defendant's Counterclaim is both retaliatory and meritless and it should be dismissed. In fact, at the conclusion of the parties' pre-suit dialogue, Defendant presented Plaintiff with an ultimatum: either accept a mutual general release in exchange for no financial compensation outside of Court, or Defendant would countersue him upon the filing of any wage claim. (*See* Declaration of James Simon, "Simon Decl." attached hereto as Exhibit "B" at ¶ 5.)

Defendant's intimidation tactic is wholly without merit. The sales technique which Defendant now attempts to characterize a breach of fiduciary duty or unjust enrichment was taught to Plaintiff by his mentor at Paylocity, Candice Marshall, and his immediate supervisor, Dean Gross. (*See* Jordan Decl. at ¶ 6). The sales which Defendant now characterizes as a "shell game" or "bad deals" were presented by Defendant to Plaintiff as two different opportunities to make sales. *Id.* One such scenario involved approaching Defendant's existing customers who had no bundled services and did not have any future contractual commitment. *Id.* The other involved approaching Defendant's existing customers who were on Defendant's old "a la carte" billing format and did not have any future contractual commitment. *Id.* These types of sales were referred to internally as "Full Bundle Adjustments" and "A La Carte Conversions." *Id.* Under either

scenario, Plaintiff was instructed to offer the customer bundled services in exchange for a new 24 or 36-month commitment. (*See* Jordan Decl. at ¶ 7). Plaintiff was instructed that these sales were desirable because they strengthened the relationship between Defendant and its existing customers, allowed Defendant to maintain or grow its market share among its competitors, and secured additional years of revenue generated from these customers. (*See id.* at ¶ 9).

Most importantly, Plaintiff did not have the ability to conceal or misrepresent the terms of these contracts from Defendant. (*See id.* at ¶ 12). Instead, every sale that Plaintiff ever made for Defendant had to go through at least two levels of review and approval. (*See id.* at ¶ 13). At no time did Plaintiff have the independent discretion or authority to set Defendant's prices. (*See id.* at ¶ 14). To the extent that Defendant gave Plaintiff guidance and instruction as to how to make sales and structure the pricing for Defendant's services, Plaintiff followed the same. (*See id.* at ¶ 16).

This is not a case of employee theft or embezzlement. Defendant does not and cannot make such allegations. Instead, Defendant is attempting to chill Plaintiff's protected right to seek unpaid wages by intimidating him with the threat that he could be forced to pay back compensation that he has already been paid. As explained below, such claims are subject to dismissal under the Illinois Citizen Participation Act ("ICPA"). Further indicative of its lack of merit, Defendant's Counterclaim fails to satisfy federal pleading standards and should be dismissed pursuant to Fed. R. Civ P. 12(b)(6). If nothing else, the Court should not permit Defendant to muddy the record in this case and should decline to exercise supplemental jurisdiction over Defendant's Counterclaim.

## II.    LAW AND ARGUMENT

### A.    Defendant's Counterclaim should be dismissed pursuant to the Illinois Citizen Participation Act.

As detailed below, Defendant's Counterclaim has all the hallmarks of a "SLAPP" in that

3

it is both retaliatory and meritless. As such, it should be dismissed pursuant to the ICPA.

### 1. <u>Legal Standard</u>

The ICPA became law in August 2007 and is also known as Illinois' "Anti-SLAPP" law.

*See* 735 ILCS § 110/1. At the outset, the ICPA provides the rationale for its existence:

> Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence. The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to effective law enforcement, the operation of government, the making of public policy and decisions, and the continuation of representative democracy. The laws, courts, and other agencies of this State must provide the utmost protection for the free exercise of these rights of petition, speech, association, and government participation.
>
> Civil actions for money damages have been filed against citizens and organizations of this State as a result of their valid exercise of their constitutional rights to petition, speak freely, associate freely, and otherwise participate in and communicate with government. There has been a disturbing increase in lawsuits termed 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs' as they are popularly called.
>
> The threat of SLAPPs significantly chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights. This abuse of the judicial process can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." 735 ILCS § 110/5.

The ICPA immunizes from liability all "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government" *See* 735 ILCS § 110/15 The ICPA permits anyone who is defending against a claim in a judicial proceeding to file a "motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." *See id.* "Upon the filing of such a motion, discovery is stayed except in very limited circumstances, and the court must hear

and decide the motion within 90 days." *Hytel Grp., Inc. v. Butler*, 405 Ill. App. 3d 113, 119, 345 Ill. Dec. 103, 111, 938 N.E.2d 542, 550 (2010) citing 735 ILCS 110/20(a), (b).

The court must grant an anti-SLAPP motion and dismiss the claim unless the nonmovant "has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c). If the motion is successful and the case is dismissed, the court must award the moving party reasonable attorney fees and costs incurred in connection with the anti-SLAPP motion. *See* 735 ILCS 110/25.

The plain language of the ICPA "does not restrict its application to those situations in which the person seeking its shelter exercised his or her rights of free speech and petition to advance some issue of public concern." *Hytel Grp. Inc.*, 938 N.E.2d at 551. "To the contrary, the scope of the Act is expressed in broad terms, protecting '[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government *regardless of intent or purpose.*'" *Id.* citing 735 ILCS 110/15 (Emphasis added). "Moreover, section 5 of the Act specifically lists 'claims' as a protected type of communication with the government." *Id.* citing 735 ILCS 110/5. Finally, section 30(b) of the Act commands that the Act is to "be construed liberally to effectuate its purposes and intent fully." 735 ILCS § 110/30(b).

Exercising the wage rights endowed upon Illinois residents has specifically been recognized by Illinois courts as protected activity under the ICPA. *See e.g. Hytel Grp. Inc., supra*. "The Act further identifies a SLAPP as an 'abuse of the judicial process' which 'can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs.'" *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 43, 356 Ill. Dec. 733, 745, 962 N.E.2d 418, 430 citing 735 ILCS § 110/5.

In determining whether a claim qualifies as a SLAPP subject to dismissal under the Act, Illinois Courts have focused on whether the claim of the non-moving party is (1) retaliatory; and (2) meritless. *See id.* ("Indeed, this court has recognized that the 'purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by *meritless, retaliatory* SLAPP lawsuits because of their 'act or acts' made 'in furtherance of the constitutional rights to petition, speech, association, and participation in government.'") (citations omitted).

"Two nonexclusive factors to consider in determining whether a claim is retaliatory are (1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and present a good-faith estimate of the injury sustained." *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 18, 376 Ill. Dec. 462, 470, 999 N.E.2d 345, 353 citing *Ryan v. Fox Television Stations, Inc.,* 2012 IL App (1st) 120005, ¶ 21, 979 N.E.2d 954, 366 Ill. Dec. 153; *Hytel*, 405 Ill. App. 3d at 126. In addition to being retaliatory, courts have also noted that SLAPPs are also "by definition, meritless." *Id.* citing *Sandholm*, 2012 IL 111443, ¶ 45; *Garrido*, 2013 IL App (1st) 120466, ¶ 23. A claim is meritless if the moving party disproves some essential element of the nonmovant's claim. *Id.* Therefore, courts also consider whether the non-moving party "has alleged sufficient facts to show the claim was genuine and not factually baseless." *See id.*

## 2. Defendant's Counterclaim is Retaliatory

There should be no doubt that Defendant's Counterclaim in brought in retaliation of Plaintiff exercising his protected wage rights under the FLSA and Illinois. The proximity in time between Plaintiff filing his claims and Defendant's allegations of breach of fiduciary duty and unjust enrichment could not be closer. Moreover, the relief requested in Defendant's Counterclaim is further indicative of retaliatory intent. While Plaintiff is exercising his federal and state rights to

fair wages and unpaid compensation, Defendant is attempting to fabricate a means by which to take back compensation that it has already paid to Plaintiff. This reeks of intimidation and an intent to chill Plaintiff's desire to exercise his rights. Additionally, Defendant makes claims for reduced revenues and profits; and reduced *future* revenues and profits. (*See* Doc. 6 at ¶¶ 36-37). Most egregiously, Defendant seeks (1) punitive damages; (2) liquidated damages; and (3) attorney fees despite the reality that its common law claims for breach of fiduciary duty and unjust enrichment provide no legal basis for any such relief. (*See id.* at ¶ 39).

In fact, Defendant has been downright brazen about its retaliatory intent. The Parties began a pre-litigation dialogue on June 12, 2024. (*See* Simon Decl. at ¶ 3). Through multiple conversations with Counsel for Defendant, Counsel for Defendant made it clear that Defendant had no intent to initiate any litigation against Plaintiff. (*See id.* at ¶ 4). At the conclusion of this dialogue, Defendant presented Plaintiff with an ultimatum, either Plaintiff agreed to a general release of all claims in exchange for zero financial compensation, or Defendant would countersue Plaintiff upon the filing of any wage claim. (*See id.* at ¶ 5).

### 3. Defendant's Counterclaim is Meritless

While Illinois law has recognized a duty of loyalty between an employee and an employer, courts have been hesitant to find a violation of the same. *See e.g. Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831-32 (N.D. Ill. 2006) citing *Dangeles v. Muhlenfeld*, 191 Ill. App. 3d 791, 548 N.E.2d 45, 49, 138 Ill. Dec. 815 (Ill. App. Ct. 1990) (conduct involving mere negligence in job performance rather than disloyalty does not implicate fiduciary duty).

Again, in determining whether an alleged SLAPP has any merit, courts consider whether the non-moving party "has alleged sufficient facts to show the claim was genuine and not factually baseless." *See Stein*, 999 N.E.2d 345 (citations omitted). Defendant's Counterclaim contains just

one non-conclusory allegation. (*See* Doc. 6 at ¶ 18). Defendant offers that Plaintiff "engaged in a scheme in which he would reduce or manipulate an enterprise client's existing pricing and then use the reduced/manipulated pricing to add services in a manner that made it appear that Jordan had made a sale of the new services when the actual amount paid by the customer either stayed the same, only increased slightly, or even decreased." On its face, with no other context, this allegation does not establish that Plaintiff breached any duty owed to Defendant or that he was unjustly enriched. At most, this allegation establishes that Defendant was unhappy with Plaintiff's job performance on certain sales.

Defendant does not add any detail, because the context surrounding these alleged "bad deals" establishes that Defendant's counterclaim clearly lacks merit. At the outset, Plaintiff never received any formal training from Defendant. (*See* Jordan Decl. at ¶ 2). Upon being hired, he was given two written policies – the Paylocity Policy Handbook and the Sales Policy & Variable Compensation Plan. (*See id.* at Ex. 1 and 2). To the extent that these policies establish a code of conduct, Defendant's Counterclaim fails to establish that Plaintiff engaged in any prohibited conduct.

Rather than receive formal training, Plaintiff learned on-the-job under the tutelage of his assigned mentor, Candice Marshall, and his direct supervisor, Dean Gross. (*See id.* at ¶ 5). Both Ms. Marshall and Mr. Gross taught Plaintiff that sales opportunities existed with (1) existing Paylocity customers who had no bundled services and did not have any future contractual commitment; and (2) existing Paylocity customers who were on Paylocity's old "a la carte" billing format and did not have any future contractual commitment. (*See* Jordan Decl. at ¶ 6). These were referred to internally as "Full Bundle Adjustments" and "A La Carte Conversions." *Id.* For customers under either scenario, Plaintiff was instructed to offer them bundled services in

exchange for a new 24 or 36-month contractual commitment. (*Id.* at ¶ 7). Plaintiff was instructed that the sales team should be leveraging the fact that a client is not under a current agreement because if a client is not under contract, it makes them vulnerable to price increases because they are not under a specific agreement. (*Id.* at ¶ 8).

These are the types of sales which form the basis for Defendant's Counterclaim. However, Plaintiff was instructed that these Full Bundle Adjustments and A La Carte Conversions were beneficial to Defendant in that they (1) strengthen the relationship between Defendant and its existing customers; (2) allow Defendant to maintain or grow Defendant's market share among its competitors; and (3) secure additional years of revenue generated from these customers. (*See id.* at ¶ 9). Notably, these Full Bundle Adjustments and A La Carte Conversions represent a small portion of the overall sales that Plaintiff completed for Defendant. (*See id.* at ¶ 19).

Moreover, Defendant's Counterclaim is premised upon the notion that Plaintiff was somehow concealing the terms of these Full Bundle Adjustments and A La Carte Conversions from Defendant. However, every sale that Plaintiff ever made for Defendant had to go through at least two levels of review and approval. (*See id.* at ¶ 13). At no point did Plaintiff have the sole discretion as to how any of his sales would be priced and at no point did he attempt to exercise such discretion that he did not possess. (*See id.* at ¶ 14). In fact, it would have been impossible for Plaintiff to make any sale that was not first reviewed and approved by Defendant. (*See id.* at ¶ 12).

Plaintiff did not receive any specific instruction on how to structure a Full Bundle Adjustment or A La Carte Conversion until approximately February or March 2024. (*See id.* at ¶ 15). At that point, Plaintiff's immediate supervisor, Dean Gross, instructed Plaintiff that (1) the discount being offered on any particular item in the bundle needed to be equal to the overall discount amount being offered on the contract; and (2) the goal should be to achieve an overall

increase in contract price in addition to obtaining a new two or three-year commitment. (*See* Jordan Decl. at ¶ 15). Plaintiff was not disciplined in any way, and Defendant made no mention of Plaintiff paying back commissions or not receiving commissions on any pending deals. From that point on, Plaintiff structured every Full Bundle Adjustment and A La Carte Conversion as he was instructed by Mr. Gross. (*Id.* at ¶ 16).

If Defendant has any legitimate gripe, it lies with its own training and oversight. Plaintiff did not, and could not, ever receive commission on a sale that was not reviewed and approved by Defendant. When faced with a protected wage claim, an employer should not be permitted to transform general performance issues into retaliatory counterclaims to threaten to claw back compensation already paid. These are the scenarios that the ICPA is designed to prohibit, and Defendant's Counterclaim should be dismissed.

**B.**     **Defendant's Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

Counterclaims are subject to the same federal pleading standards as allegations raised in a complaint. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (applying Rule 12(b)(6) standard to motion to dismiss counterclaims). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Sarkis' Cafe, Inc. v. Sarks in the Park, Ltd. Liab. Co.*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant's Counterclaim offers, in a purely conclusory fashion, that Plaintiff (1) did not act in good faith; (2) acted in bad faith; (3) engaged in fraud; (4) intentionally made false statements to Paylocity; (5) intentionally misrepresented material facts to Paylocity; (6) intentionally concealed material facts from Paylocity; and (7) engaged in acts and omissions calculated to deceive Paylocity. (*See* Doc. 6 at ¶¶ 26-33). However, Defendant's Counterclaim

contains no detailed factual allegations which would make it plausible that Plaintiff is guilty of any of these things. Defendant's Counterclaim hints at an alleged fraud while trying to call it something else. This is particularly troubling as Defendant should be held to the heightened pleading standards of Fed. R. Civ. P. 9(a).

> **C. This Court should decline to exercise supplemental jurisdiction over Defendant's Counterclaim.**

In the event that the Court declines to dismiss Defendant's Counterclaim pursuant to the ICPA or Fed. R. Civ. P. 12(b)(6), the Court should nevertheless decline to exercise supplemental jurisdiction over Defendant's Counterclaim. A federal court's decision to exercise supplemental jurisdiction over state law claims is discretionary. *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019) citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966); *see also Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008).

Outside of the lens of the ICPA, Courts within this District have expressed their distaste for the chilling effect that such counterclaims may have on the rights conferred by the FLSA. *Campbell v. Marshall Int'l, LLC*, 698 F. Supp. 3d 1036, 1039-40 (N.D. Ill. 2023) ("Exposing workers to countersuits simply for challenging their employment status would amount to an abridgement of rights conferred by the FLSA, and would unreasonably chill such challenges.") citing *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." (citations and internal quotation marks omitted)).

The public policy disfavoring such counterclaims was espoused long ago in *Brennan v. Heard*, 491 F.2d 1, 2 (5ᵗʰ Cir. 1974), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). *Brennan* held that*:*

> The FLSA decrees a minimum unconditional payment and the commands of the Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court. The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages. Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act. Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions.

*Brennan*, 491 F.2d at 4; *see also Wagoner v. N.Y.N.Y., Inc.*, 2015 WL 1468526 at *5 (S.D. Oh March 30, 2015) (quoting *Brennan* for the same proposition). *See also Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983) (an employer was not entitled to assert setoffs, counterclaims, and third-party complaints against amounts found to be due to his employees); *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740-41 (5th Cir. 2010) ("Generally speaking, courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it."); *Sneed v. Wireless PCS Ohio #1, LLC*, No. 1:16CV1875, 2017 WL 879591, at *3 (N.D. Ohio Mar. 6, 2017) (dismissing defendant's tort and contract counterclaims for lack of jurisdiction because "the counterclaims would change the nature of this lawsuit and would predominate over plaintiff's statutory wage claim."); *Shaw v. Set Enters., Inc.*, 241 F. Supp. 3d 1318, 1328-30 (S.D. Fla. 2017); *De Angelis v. Nat'l Ent. Grp.*, No. 2:17-cv-924, 2018 U.S. Dist. LEXIS 154279, 2018 WL 4334553, at *4-5 (S.D. Ohio Sept. 11, 2018) (dismissing breach of contract counterclaim in materially similar context); *Bright v. 1909 W25, LLC*, No. 1:19 CV 543, 2019 U.S. Dist. LEXIS 244448, at *7-8 (N.D. Ohio Aug. 6, 2019) (noting that "courts have hesitated to find that state-law claims form part of the same case or controversy as FLSA claims.")

### III.    CONCLUSION

When faced with an unpaid wages claim, an employer should not be permitted to conjure up performance-related issues to threaten the employee with the prospect of having to pay back compensation that has already been paid. This becomes particularly repugnant when the employer demands relief not founded in law including lost profits, lost future profits, punitive damages, liquidated damages, and attorney fees. Defendant's Counterclaim is prohibited by the ICPA and should be dismissed. Evidencing its lack of merit, Defendant's Counterclaim is also subject to dismissal under Fed. R. Civ. P. 12(b)(6). If nothing else, Plaintiff respectfully requests that the Court decline to exercise supplemental jurisdiction over Defendant's Counterclaim for the well-established policy reasons detailed above.

Respectfully submitted this 25th day of November 2024,

By: /s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon (*pro hac vice* forthcoming)
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, OH 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the forgoing was served upon all necessary parties through the Court's electronic case filing system on this 25th day of November 2024.

<u>/s/ *Michael L. Fradin*</u>

*Counsel for Plaintiff*